# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-1316V
UNPUBLISHED

|  |  |
|---|---|
| ELBERT COMPTON, | Chief Special Master Corcoran |
| Petitioner, | Filed: March 5, 2021 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Findings of Fact; Onset;  Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*Jerome A. Konkel, Samster, Konkel & Safran, S.C., Milwaukee, WI, for petitioner.*

*Colleen Clemons Hartley, U.S. Department of Justice, Washington, DC, for respondent.*


## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RULING ON ENTITLEMENT[1]

On August 28, 2018, Elbert Compton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table claim - that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on December 28, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. The parties have now sought a determination of facts bearing on the adequacy of Petitioner's showing on certain elements of his claim.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that there is a preponderance of evidence that the onset of Petitioner's injury, specifically shoulder pain, was within 48 hours of his vaccine and his pain was limited to his left shoulder. Further, I find that Petitioner is entitled to compensation for a left SIRVA.

## I.     Relevant Procedural History

Approximately one year after the case's initiation, Respondent filed a status report in July 2019 indicating that he wished to engage in informal settlement discussions. ECF No. 23. A demand was accordingly provided to Respondent on September 13, 2019. EF No. 28. This case was then stayed from January 10, 2020 through August 20, 2020. ECF No. 31, 37. Respondent subsequently filed a Rule 4(c) Report on September 4, 2020, recommending that compensation be denied. ECF No. 38. Respondent argued that Petitioner failed to establish a Table claim because the medical records did not establish his pain began within 48 hours of his vaccination and Petitioner's complaints were not limited to his left shoulder. Rule 4 Report at 6.[3]

During a status conference held on September 22, 2020, I provided my initial thoughts regarding this claim, and ordered Petitioner to file a motion for a ruling on the record with regard to onset. Petitioner did so on October 26, 2020, arguing that his symptoms began within 48 hours of receiving the flu vaccine. ECF No. 42. Respondent filed a response on November 9, 2020, maintaining his position that this case should be dismissed, and that I should issue a finding of fact to that end. ECF No. 43. This issue is now ripe for resolution.

## II.     Issue

At issue is whether the onset of Petitioner's pain occurred within 48 hours, and also whether his pain was limited to his left shoulder as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA claim. 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); § 100.3(c)(10)(iii) (requiring pain and reduced range of motion be limited to the shoulder in which the vaccine was administered).

## III.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis,

---

[3] Respondent also argued that Petitioner failed to show causation-in-fact. Rule 4 Report at 6-7.

conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of

the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Finding of Fact

### A. Onset of Petitioner's Injury was within Forty-eight Hours of his Flu Vaccination

The following fact finding is based on a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:

- Petitioner received a flu vaccine in his left deltoid on December 28, 2016 at Waupun Correctional Facility. Ex. 2 at 315.

- On January 2, 2017, Petitioner requested an appointment at his Health Services Unit. In the request form, Petitioner reported that he had a flu vaccine on December 28, 2016, and had tenderness, weakness, muscle fatigue, and a very painful shoulder after five days. Ex. 2 at 362.

- On January 5, 2017, Petitioner presented for care at the Health Services Unit of the Waupun Correctional Facility with left arm tenderness, muscle fatigue, sharp pain, and weakness.  Ex. 2 at 29.

- On January 6, 2017, Petitioner was seen for left shoulder pain "since flu shot." Ex. 2 at 29.

- A record from January 11, 2017 states that  Petitioner saw "RN Garlock" on January 5, 2017 "due to my flu shot I got on the 28th of Dec which she stated I had inflammatory reactive tissue in and around my rotator cuff and I still have tenderness, weakness and muscle fatigue and I'm in discomfort pain". Ex. 2 at 361.

- On January 20, 2017 Petitioner continued to report left shoulder pain "since flu shot." Ex. 2 at 31. Another record from that same date states Petitioner was seen for "shoulder pain from flu shot." *Id.* at 29.

- On February 1, 2017 Petitioner reported discomfort and sharp pain "due to the flu vaccine". Ex. 2 at 360.

- A record from February 25, 2017 notes that Petitioner "saw the nurse on 2/5/17 and reported pain from flu shot (12/28/16)." Ex. 2 at 358.

- On June 12, 2017, Petitioner reported that he experienced "sudden onset of L[eft] shoulder pain and loss of [range of motion] following flu shot." The onset was noted as December of 2016. Ex. 2 at 97.

Based on the above medical entries, the preponderance of the evidence supports a finding that onset of Petitioner's injury occurred within 48 hours of his December 28, 2016 vaccination. Petitioner complained of left shoulder pain on January 2, five days after he received the flu vaccine. Ex. 2 at 315. Further, the contemporaneous medical records continually and consistently indicate that Petitioner reported shoulder pain since his flu vaccine. See Ex. 2 at 29 (record from January 6, 2017 stating left shoulder pain "since flu shot"); Ex. 2 at 31 (record from January 20, 2017 reporting left shoulder pain since flu shot); Ex. 2 at 97 (June 12, 2017 record stating Petitioner's pain and loss of motion was sudden following a flu vaccination). These records are sufficient to establish onset consistent with the Table's requirements.

### B. Pain was limited to Petitioner's Left Shoulder

I also find that there is a preponderance of evidence that Petitioner's pain was limited to his left shoulder. As the medical records establish:

- On January 2, 2017, Petitioner reported tenderness, weakness, muscle fatigue, and a very painful shoulder following a December 28, 2016 vaccination. Ex. 2 at 362.

- On January 6, 2017, Petitioner reported left shoulder pain. Ex. 2 at 29.

- On January 20, 2017, Petitioner was seen again for left shoulder pain. Ex. 2 at 29.

- On February 1, 2017 a Nursing Encounter Progress Notes lists the primary complaint as "Pain to L-shoulder". Ex. 2 at 28. The record also states that the location of the pain is Petitioner's left shoulder and describes it as tight, tender, and achy. *Id.*

- On June 12, 2017, Petitioner reported that he experienced "sudden onset of L[eft] shoulder pain and loss of [range of motion]." The onset was noted as December of 2016. Ex. 2 at 97.

Based on the above medical entries, the preponderance of the evidence supports a finding that Petitioner's injury was more likely than not limited to his left shoulder. Records from early January and February of 2017 consistently report shoulder pain and loss of range of motion, which are specific, contemporaneous evidence and consistent with other SIRVA cases. Admittedly, there are at least two records reporting pain through Petitioner's neckline. Ex. 2 at 29, Ex. 5 at 79. However, the majority of other records support a finding that Petitioner's pain was limited to his left shoulder, and Respondent has not offered sufficient other evidence to rebut the overall conclusion that the pain was mostly limited to Petitioner's left shoulder.

## V.    Conclusion

In view of the evidence of record, I find that there is preponderant evidence that the onset of Petitioner's injury, specifically shoulder pain, was within 48 hours of his vaccine and his pain was limited to his left shoulder. Since Respondent challenges no other elements of Petitioner's claim, and I find they are also met,[4] on the evidence of record, I find that Petitioner is entitled to compensation.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[4] The other elements of Petitioner's SIRVA claim include that he had no history of pain, inflammation, or dysfunction of the affected shoulder prior to his vaccination and that no other condition or abnormality is present that would explain Petitioner's symptoms. C.F.R. § 100.3(c)(10)(i) and (iv). Respondent also does not dispute that the vaccination was administered within the United States, that Petitioner suffered the residual effects of this injury for more than six months, and that there has been no prior award or settlement of a civil action for damages on his behalf as a result of his condition.